v. Inganamort Good morning, Your Honors, and may it please the Court. My name is James W. Beagle. I'm of Fort Lauderdale, Florida, and I represent Appellants John and Joni Inganamort of Boca Raton, Florida, and also of Gladstone, New Jersey. With the legal report, I will reserve five minutes for rebuttal. This case arises from the sinking of a 65-foot fishing vessel in Boca Raton, Florida. The Inganamorts were at their home in New Jersey at the time. The insurance policy that was issued by Appellee Chartis was denominated a yacht policy, and of substantial significance to this case, it was an all-risk policy. Right, and I think we're well familiar with the facts. Can you get right to the point of who's got responsibility under an all-risk policy to prove fortuity of an event? Fortuity per se, Your Honor, it's the responsibility of the insured, in other words the Inganamorts in this case. My client had that responsibility. The question is, when you look at all these cases, what does that entail in reality? It's easy to say it's the responsibility to prove fortuity, but what does that mean? The more recent cases have made it very simple to say, number one, to show that there was a loss, nothing more than that, and number two, to show that there was a policy in effect. How does that not just, first off, we can argue about what the modern cases show, but assume we thought there was a case out there that said that. How does that not drain all meaning out of the word fortuity? To say there was a loss, there was a policy, says nothing about fortuity, nothing at all, does it? I mean, what does the word fortuity mean? That is the question, I think, in a lot of these cases. The 11th Circuit has... It's got a meaning. In ordinary parlance, right, it means an event that you really couldn't have foreseen, or it was not something that was predictable, or over which there was any control, right? Isn't that the common meaning of it? If the only question were loss and policy, then that question of fortuity would be eliminated in its entirety, would it not? Right, and the 11th Circuit has most recently said, basically, that it's a synonym of accidental, and I think if you look in the dictionary, that's what it says. But if you go further back to, say, the Morrison case in the 5th Circuit, and I do believe that that is the leading case, it goes into a longer, more drawn-out explanation of what it means, and in specific application to emerald deep cases. Well, that's a case, like some of the others on which you rely, that deals with cargo. And even saying that the insureds do not need to make a showing of the specific cause, it still places the burden of showing fortuity on the insured, in the sense of going on to examine whether the cargo was in good condition, and when the policy attacked, and was damaged when it was unloaded, without any further explanation, and concludes from that, that it's been established. Wouldn't the analogy here be some evidence in the record supporting the notion that this yacht was seaworthy before the date of loss? I would tend to agree with that, Your Honor, and there are some of the cases that say that in the district court, or in the trial court, there have been assertions that in general, the vessel was in good condition. But in this case, the record indicates that it was not in good condition. Well, Your Honor, we take issue with that. How do you take issue with it? You did not submit in the district court a 56.1 statement, right? That is correct, Your Honor, that was my oversight. Are we not bound to look at the statement of undisputed facts that the defendants submitted? I mean, are you free to come in and dispute facts that were not disputed in the district court? Well, I would submit, Your Honor, that there's nothing in the undisputed facts, fortunately, that add up to there being any kind of wear and tear in their phraseology that directly led to the loss. Well, think about it a little differently. Look at the 56.1 of the defendants and help us with what facts have they put forth in that submission that amount to fortuity to your client's benefit. They have admitted that there was a loss, and that's really all you have to prove. Now, in terms of their assertion that it was due to possibly wear and tear, which, by the way, they have not committed themselves to that position, they're all over the board. I'm sorry, this is kind of a segue, but they have never issued a final report as to what they believe the cause of the loss was. After nine years, they don't have any idea what caused the loss. Now, we've got a legal position stated in court. I mean, if they were to come forward and say something other than what they've said in court, I imagine you or somebody else would be saying, wait a second, there's a judicial estoppel here. They have taken a position, and the position that they've taken and advocated strenuously is there was wear and tear and unattended to maintenance, and that that's the cause of the bilge pumps that weren't working and loose or missing, screw-letting boards open up and let water in. That's what is the cause. Why isn't that a position that speaks directly to a lack of fortuity in the face of no position about fortuity on the part of the plaintiffs? Well, all of these theories are at odds, and they have not presented any one. Sorry, all these theories are what? Are at odds. Thank you. They can't settle on one reason why the vessel sunk after eight years. What is your support for an obligation on their part to come up with one particular reason? Well, Your Honor, I'd like to point to an example in a Southern District of Florida case in 2013. It's called Class Action of South Florida versus National Union Fire Insurance. What page of your brief is it on, please? It's not, Your Honor, and I apologize for that. I wasn't aware of the case at the time. But in any event, in 2013, the Southern District of Florida indicated that, quote, defendant insurer introduced the affidavit in report of its expert who concluded that the vessel sank due to the corrosion and erosion of the air-conditioning pump's faceplate, housing, impeller, and impeller blades, resulting in small holes therein, which allowed salt water to flow into the vessel's engine compartment and throughout the vessel. Defendant contends that because the damage to the vessel resulted from wear and tear from corrosion, it is specifically excluded from the insurance policy. Now, that, I submit, Your Honor, is a proper contention that wear and tear was the cause of the loss. Well, if you're going to talk about expert reports, there's an expert report here to counter any notion that heavy rainfall was the reason for the problems with the yacht, right? And that expert report posed by the police here says that there was not a large amount of rainfall and that you'd have to have 4,160 gallons of water, sounds like some ridiculous amount, fall in per hour, I think it was, or per day, I don't remember. So, and you had nothing to counter that. Well, Your Honor, I think you might be referring to two different experts' reports. There were five that the Charters hired. There was one who was the meteorologist from New York who opined on Florida weather and didn't have any credentials to back it up. And I went into that in my brief on summary judgment very closely. And the Daubert, the N. Ray Paoli test, the so-called expert on weather just didn't stand up to scrutiny. Does the district court agree with that? The district court did not address that, even though it was fully briefed. The district court did not address the meteorologist? Did not apply the Daubert test, did not apply the N. Ray Paoli. Made a Daubert motion? I did not file such a motion. I briefed it fully, though. The district court had it in front of it. I'm so sorry. I'm so sorry. You briefed the Daubert, you made a Daubert motion, you briefed it before the district court, and there was no ruling? There was no separate motion, Your Honor, no. I briefed it in the summary judgment response. They raised it in their motion for summary judgment. I briefed it in my response. So you tried to make a Daubert motion on the fly in response to summary judgment is what you're telling us? I wouldn't have qualified it that way, Your Honor, but I'm beginning to think that that's what happened. Okay. What about the fact that we've got undisputed facts that included that the policyholders have no data to support their theory that the vessel was subject to heavy rains, and the weather data confirms there was no extraordinary rainfall at the address on any of the alleged dates of loss? Okay. The way I read that, Your Honor, is that fortunately these are all phrased in terms of what the Robert report says. It doesn't say that it's an ultimate fact that there was not enough rain. And the effect of a 56.1 is that all of those facts are accepted. Except the fact states, or rather the assertion is, the Robert report reflects that approximately .26 inches of rain fell. And if that's the only evidence in the record. But it only refers to what the report says. It doesn't say that that is the ultimate fact. It says that the weather data in the record confirms there was no extraordinary rainfall at the policyholders' address on any of the alleged dates of loss. I'm sorry, which item is that? Number 18. 18. It appears that there was an assertion of fact posed, which was then not opposed by the plaintiffs, that says basically there was an extraordinary rainfall, period. Okay. So if we accept that that's true, and then that the record contains the assertions about unattended to wear and tear and maintenance, how does your client bear the burden of proof for showing fortuity, which you've acknowledged they do bear, unless we accept your position that the only thing you have to show is a loss? Because, Your Honor, in all the cases, there's an agreement that the insured need not prove the precise cause of the loss or damage. True. You need not show the precise cause, but they all say you have to show fortuity. I take it your bottom line position is the one you started with. To show fortuity, you only have to show there was a loss. Is that it? You also have to show that the policy is in force, and that's completely consistent with the more recent rulings. Okay. But it's also buttressed by the pushback from the Morrison Court and others that say there may be some kind of idea out there that the insured has to show the precise cause of the loss. It doesn't. What's your best case for your basic proposition? I'm sorry? I said, what's your best case for your basic proposition? That you don't have to? You just have to show that the policy is in force, and there was a loss. Well, I have the... But your absolute best case, the one that if we go to this, it's dispositive, we can all go home. Well, I would say Morrison. You think Morrison stands for that proposition? Yes. Okay. All right. We'll hear from you on rebuttal, and we'll turn now to counsel for charges of property casualty. May it please the Court. Neil Modi from Conifoli in Roseland, New Jersey, with me is my colleague Thomas Wester from Conifoli. We represent the plaintiff appellees, Chartist Property Casualty Corporation. I thank the panel for your time and consideration of this appeal. The question that was asked to the appellant's counsel was, what do you have to show to prove fortuity? I think that's what we're... Well, you could even start with, what is fortuity? It's an accident. It's been defined in the cases as something that's, as your Honor noted, unexpected, unanticipated chance event, out of the blue, something that you wouldn't expect. What the courts do is they take marine insurance policies that are all-risk policies, and they read into them this fortuity requirement. And the reason they do that is because the policyholder is the shipowner, and the shipowner is the one that knows what happens, because typically the loss happens out at sea. Now here, the vessel took on water and submerged while it was sitting outside of the policyholder's house, docked at bay. And all the record evidence unequivocally demonstrates that the vessel was in terrible shape. But if your argument is, if it's a wear and tear one, you have exclusions that cover that, right? I mean, that's maintenance and due diligence. If a policy has an exclusion, doesn't that suggest that a fortiori there's coverage? There's coverage that is then excluded? No, no. The policy is an all-risk policy. It means we cover the risk of loss, but the policyholder has to first, before the policy comes into the coverage of the policy, it's the policyholder that bears that initial burden. And admittedly, it's a light burden. They just have to show that there was an accident, that this was some unexpected, fortuitous loss. It is only then, when the policyholder has brought the claim within the coverage of the policy, that you look to the exclusion. So Your Honor's right. There are exclusions for wear and tear. There are warranties for having a captain. There are requirements of due diligence. The burden would shift at some point to the insurer to prove those exclusions. And I think we can if we had to. But in this case, we never got that far. But aren't you saying that those exclusions are really redundant? Because you would look at that at the outset where the burden is on the insured rather than the insurer, treating it as how you define fortuity rather than exclusion. I suppose if the only examination of fortuity involved whether there was wear and tear, then the wear and tear exclusion would be a redundancy. Would it have an event that was clearly fortuitous, a giant hurricane, and then nevertheless have a case to make under your exclusion that, wait a second, it would have weathered that storm, the experts say, but for a lack of maintenance and wear and tear? I think it would depend on the case and the circumstance of the vessel. And it depends on the hurricane. If it was a really bad hurricane and the vessel was in pretty good shape, then, yeah, that ought to be covered. But you could have a circumstance where fortuity was understood, it was clearly fortuitous, and nevertheless have the exclusions kick in and be important? Absolutely. Yeah, you could. You could have a fortuitous event. And it all kind of makes sense, I think, because if you have a terrible storm, that didn't happen in this case, but let's just say for the sake of this hypothetical, you had a terrible storm that came in and it caused significant damage, and you had a vessel that was in good shape, fortuity would be established, there would be no exclusion to take it out of coverage, and the insurer would pay as required in the contract. Then you take the really bad storm that caused the damage, but you have a vessel that's in bad condition. If the vessel would not have sunk but for that bad condition, the policyholder would have brought the claim within the coverage of the policy. Then the insurer would have to show, I know there was a storm, but it was in such bad shape, it doesn't matter if it was a storm, it was going down anyway. That would be a burden on the insurer. It would be actually a tough burden because they'd have to show that in the absence of this storm, the vessel would have gone down. That would have happened in circumstances like, say for example, the vessel went down two weeks before and some good Samaritan came up and lifted the boat up. Then they just left it and the boat went down again. Someone came by and lifted the boat up and it had holes in it and it was corroded. In that circumstance, the vessel would be in such bad condition that the exclusion would kick in.  A fortuitous event and the exclusion doesn't kick in. You agree that under the general rule of fortuity, as it's understood by the courts, that negligence is still fortuitous. Yes, a result, the cases say that fortuity can apply where there is some negligent conduct that directly causes the loss. It doesn't apply where it's willful. Well, it doesn't apply, and this is important, I'm glad you bring that up. Fortuity doesn't apply where it's willful, it doesn't apply where there's fraud, and it also doesn't apply in circumstances of wear and tear. Well, when you say wear and tear, that's the point, right? I mean, you seem to be saying, hey, this isn't fortuitous because you didn't take care of your boat, and a logical response to that is the cases, many of them, including Morrison, say negligence doesn't mean there wasn't fortuity. Negligence does not create a non-fortuitous event. So if they're negligent in not taking care of their boat, why doesn't that mean that the wear and tear, the maintenance problems could nevertheless be set aside and you can look at the fact that there is a loss and assume it's fortuitous because boats don't just sink on their own. That's a good question. I think the way that you look at it is in the context of the claims and how they're describing negligence. So they're saying that in Morrison Grain, for example, there was this bagged urea, and the question was one of the potential reasons that there could have been a loss was that there might have been some negligence in the way that it was stowed that led to the loss. The notion of ordinary wear and tear is carved out because the nature of a sea vessel is it lives in the water. It lives in an area where it's surrounded by water, and if not properly taken care of, it's always going to sink. So in those circumstances, I don't think any of the cases stand for the proposition if you negligently allow your vessel to have ordinary wear and tear, then that's an exception to fortuity. If negligence is still fortuitous and we understand negligence to be a foreseeable risk, then why isn't wear and tear in the circumstances you were just describing, for example, so it's foreseeable that if you don't take care of the boat, it's going to sink? Why isn't that simply foreseeable risk and you at least get past, if all you can show is that wear and tear, you at least get past the initial showing of fortuitous loss, and then you're in the realm of the insurer proving the exclusion? Well, I think it's precisely because it's foreseeable. If something's foreseeable, then it's not fortuitous. Fortuity refers to something that is unforeseen. How do you square that with our understanding of negligence? Well, I think when negligence comes into the concept of not taking care of a vessel as opposed to not stowing bags properly or some of the other examples of negligence, it is always going to be a foreseeable consequence. When you don't take care of a boat, you allow it to sit in the water with a hole in it, the boat sinks. In fact, the policy on this case conceded as much. Why isn't your answer that that wasn't their argument, right? I mean, we'd have a different case if they relied on their negligence and they just said, you know, we didn't take care of it the way we should. But their principal argument, as I understand it, is it was this heavy rainfall, and then that becomes the question of fact that's fought about, and you find out there's not a heavy rainfall. Yeah, that's an excellent point, Your Honor. Sometimes I get so wrapped up in coverage, I actually enjoy the hypothetical, and I find it fascinating. But practically, it's not an argument that was raised. It's not a reason for the loss. The loss was occasioned by it. In the sense that they say all we have to show is loss. I mean, isn't that a way of saying our boat sank, and who cares whether we were negligent? So if we took it that way and we accepted that their argument was in front of us, I take it that you're, and I'm just going to reframe it so that I understand, I take it your argument is it's true that negligence doesn't eliminate the possibility of fortuity, but that doesn't mean that any kind of negligence always eliminates every kind of fortuity, because if that were the rule, then it would swallow the rule of fortuity. Absolutely, Your Honor. It would, as you said earlier, drain the concept of all meaning, and it would make no sense to read in a fortuity requirement only to drain it out. No pun intended. What about recklessness? In the context of fortuity, would reckless conduct? I ask because at the outset of Pelham's brief, they do lay out that, with a block quote confirming it, that negligence is still fortuitous, that willfulness is not, and that recklessness remains an open question, from which I infer they're suggesting that their conduct was, at worst, reckless, negligent or reckless, perhaps not made explicit, but that is the opening of the brief. Okay. I didn't understand the argument in that context, but I will respond. I think that if they're saying that they were reckless in failing to maintain the vessel, that that would take the case out of fortuity. I don't think that you can be reckless in not maintaining a vessel and then claim, when it sinks, that that was unforeseen. I think that when you don't take care of a vessel, it is the absolutely foreseeable anticipated consequence that the vessel is going to take on water and submerge, which the record demonstrates here happened multiple times in the fall of 2011. Getting into the facts, there was some discussion. I think on the law, it's very clear that the policyholder bears the burden to show a fortuitous loss. They've admitted that right here at the podium today, so we can take that off the table, right? I think so, Your Honor. I think so. I also think that we've established that to take out the fortuity requirement and just say you only have to approve a loss, I don't think that the Court's intended to remove that. In fact, I'll point out that the Morrison-Grain case, while they did say you don't have to show the precise cause of the loss, they also go on to say that you do have to have a fortuitous loss. You have to show a fortuitous loss. And many of the cases that cite Morrison-Grain cite it for that very proposition. Counsel, is this case narrower than most or perhaps informing what the scope of our ruling might be? Because this isn't a case where the owner simply said no explanation. They actually affirmatively put forward an explanation, that being the heavy rainfall and the record with undisputed facts indicates no heavy rainfall. In that circumstance, is it a different analysis than if an owner had said this is simply accidental? It was just like in Morrison. It was seaworthy at the time that the policy attached. And then it had this loss. So we move forward. There is coverage.  Well, Judge Krause, as you pointed out earlier, Morrison's a little different because it was a lost cargo case. And factually, that presents a lot of differences because the loss is to a piece of cargo on a vessel as opposed to the vessel itself. Additionally, there was a clean bill of lading where it showed that the vessel was in good shape. Here, there's no evidence that the vessel was in good shape before the loss. In fact, all of the evidence shows that the vessel was in pretty bad shape, as the court found. So I think that what Judge Walsh properly did in this case is he looked at both issues. He looked at the fact that there was no fortuitous loss proffered. And then he evaluated, considered, and gave treatment to, and ultimately rejected the proffered cause of loss because there was no factual basis to support it. But for those reasons, we respectfully submit that the ruling below should be upheld. All right. Thank you very much. Mr. Beagle. Thank you. You're ours. Actually, Judge Greenaway, you kind of took me by surprise with your question as to what my favorite case would be. Because that's like asking, you know, a parent what their favorite child is. Weird analogy, but that's the way I take it. Anyway, so if I can amend my answer. Let me amend the question if you understood it to be that. I don't want your favorite case. I want your best case. Okay. Well, my best cases are Banco Nacional de Nicaragua versus Argonaut from the 11th Circuit, which says that. What's the case name again? I'm sorry. Banco Nacional de Nicaragua. Banco Nacional. Banco Nacional. Yeah. Got you. National Bank of Nicaragua. Should I give the full citation? No, we have that. Okay. That would be one that shows that you only have to show that the loss occurred during the policy period and that there was a relevant loss. Then there's also. Where does it say that's all you have to show? It's at page 1340 of that case. Where, please? 1340? No, where on 1340? Oh, I don't know exactly the position on the page, but the paragraph I believe the law starts with, or the relevant language starts with, the plaintiff in a suit under an all risks insurance policy must show a relevant loss in order to invoke the policy. Here's what it actually says. It says, Morrison, the insured, had the initial burden of proving a loss by showing that the cargo of Urea was in good condition when the policy attached and in damaged condition when unloaded from the vessel. I take that to mean in not so many, in more words, there was some fortuitous loss. In other words, we had stuff that was right and in good shape, and then there was an event, some chance event that turned it into something bad. But maybe what you're saying is that it just means there's a loss. That's your position. Just a loss. Yes. I mean, that's really kind of simplifying it. If that is what that means, then I put it to you again, what meaning does fortuity have at all? It has no meaning in that context then, right? Because if any event, including a completely predictable event occurs, by definition it's not a fortuitous event, but you're saying that doesn't matter. It just has to be a loss. I would have to say that through experience, that's why the cases are being refined to this point. Because when you're putting that burden on the insurer, you're asking them to come up with the ultimate reason. On the contrary, you're not saying give me the single reason. You're saying you've got to give me at least a statement that this was unanticipated. Those are different things. It's one thing to say you have to pinpoint the exact loss for me. And it's a completely different thing to say you have to at least show at a minimal level that there was an unexpected event which was a causal piece of this loss. Right. And I think that that's been the undertone all along. And I say undertone because it's been understood by both parties all along that this was an unexpected event. No, no, they don't accept that this was an unexpected event. They say this was completely anticipatable because you didn't take care of your boat. You just didn't do the simple, obvious things to keep a boat from sinking. And your client came forward and said, no, it was a huge rainstorm. That was the fortuitous event that was put forward. But when it put to proof, showed up with no evidence of that. There was a lack of proof in the district court. So if we take that foundation of fact and say you've got to show some fortuity and, in fact, no fortuity was shown, I mean, it puts the plaintiff in a tough spot, doesn't it, plaintiffs? Well, actually, Your Honor, if you want to discard the rainfall theory, you want to do that. It's not a question of what I want to do. I understand. It's a question of whether you put evidence in. There's a 56.1 rule obligation. It wasn't meant so that the undisputed facts became undisputed. And they were, Judge Krauss read you the pertinent paragraph, which says there wasn't any unusual rainfall in this period. If that's the factual foundation we're left with, not because we want it to be, but just because it is, where does that leave the plaintiffs? I think it leaves them squarely with the position that, number one, it's not their responsibility to show the ultimate cause. All they had to do was to say, in general, we didn't expect it. And second of all, there are all the cases that say if a loss is unexplainable, that's actually what an all-risk policy was designed to do. If that's all fortuity required, when would you ever have a fight about fortuity? There'd never be a fight about fortuity. The best example of that, Your Honor, where there was a legitimate fight about that is the Balfour case from the Second Circuit. And in that case, it was argued that the insurer said, OK, we are not going to cover the loss of coffee in a Mexican warehouse because we don't think it was ever there. So you have to prove the loss. I mean, that's obviously different. What I'm saying is, if all you need to show is that you had a policy and it was enforced, then you'd never have a fortuity, right? Because all you show is, I had the policy and I paid the premiums timely. So there'd never be a fight about fortuity. Your case, Balfour, is about fraud. That's entirely different. Although it was qualified clearly as a fortuity matter. OK. And that's – I'm sorry. I think we've got the positions. Thank you, Your Honor. Thank you very much. We appreciate it.